961 F.2d 964
 295 U.S.App.D.C. 210
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Marvin BEST, Appellant.
 No. 91-3152.
 United States Court of Appeals, District of Columbia Circuit.
 May 7, 1992.
 
 Before RUTH BADER GINSBURG, KAREN LECRAFT HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal from the judgment of conviction of Marvin Best was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. Upon full review of the issues presented, the court is satisfied that appropriate disposition of the case does not warrant a published opinion. See D.C.Cir. Rule 14(c). It is accordingly
 
 
 2
 ORDERED AND ADJUDGED, for the reasons stated in the accompanying memorandum, that the judgment from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Marvin Best appeals from a district court judgment of conviction and from an order denying his motion to suppress evidence. Best was found guilty by a jury of possession with intent to distribute five grams or more of a substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(iii). He contends that the district court erred in admitting into evidence contraband retrieved from a car belonging to him, as well as a beeper and car keys found on his person. Best also contests the district court's refusal to give a "missing witness" instruction. We affirm his conviction.
 
 
 5
 Testimony, credited by the district court, indicated that the cocaine base could be seen through the window of Best's car, which was parked on a public street; accordingly, we find no error in the court's conclusion that the discovery and seizure of the drugs did not violate the Fourth Amendment. At trial, when relevant testimony was introduced, Best failed to request reconsideration of the court's pretrial refusal to suppress the beeper and keys. That failure forecloses our consideration of objections concerning those items. Finally, no "missing witness" instruction was required in this case. To warrant such an instruction, the "missing witness" must be "peculiarly within [the government's] power to produce"; Officer Starks was not available to the government, and the defense did not take up the opportunity to obtain an unopposed continuance.
 
 I.
 
 6
 On the afternoon of December 12, 1990, officers from Metropolitan Police Department's Seventh District Vice Unit received a tip that two men possessing semiautomatic guns had been observed in the vicinity of 1217 Congress Street, Southeast; one of the men, police were told, was wearing a green jumpsuit. Arriving at the location, the officers saw Best, who, in his green jumpsuit, fit the informant's description "to a T." (TrM. 9) With guns drawn, the police ordered Best and others to "hit the ground." A subsequent frisk revealed no weapons, save for a toy, carried by Best's brother, modeled on a 9mm firearm.
 
 
 7
 Police did discover, however, a cache of drugs inside Best's nearby automobile. According to the government, Officer Kline, independent of the ongoing investigatory "stop," peered inside the window of the parked car and noticed a plastic bag--containing what appeared to be rock cocaine--protruding from the map compartment (TrM. 41-43). Another officer, Starks, using keys apparently obtained from Best, opened the driver-side door and retrieved the plastic bag. It held 21 smaller bags, each of which contained small rocks of cocaine. After the drugs were spotted, Best was placed under arrest.
 
 
 8
 At some point, although the record is ambiguous as to the sequence, the police seized a beeper and approximately $200 in cash discovered in Best's jumpsuit. Also unclear from the record are the circumstances under which Investigator Starks obtained the car keys.
 
 
 9
 Best moved to suppress all "physical evidence" obtained by the police on the date of his arrest. In that motion and at the subsequent suppression hearing, Best argued principally that the police lacked an adequate basis for the stop; that the frisk had exceeded its permissible scope; and that Officer Kline's mere "hunch" could not justify his looking inside Best's car. The district court denied the suppression motion, explaining in its memorandum order that the cocaine base had been discovered in "plain view" and that the officers' conduct was justified in light of the tip--reliable in other respects--informing them that the individuals they then apprehended were carrying semiautomatic weapons.
 
 
 10
 At the outset of the trial, the government notified the court that it would proceed without the testimony of Investigator Starks, who had been summoned to Alabama on military reserve duty. Best argued that his defense would be prejudiced by the absence of the officer, who had testified before the grand jury, and who would cast light on whether the door to Best's car was unlocked, a fact which might prove helpful to his case. The district court denied Best's motion to dismiss the case and indicated preliminarily that, in light of the circumstances of Starks's absence, a "missing witness" jury instruction did not appear appropriate. Best elected not to seek a continuance until Starks's return, despite an assurance that the prosecution would not oppose such a motion.
 
 
 11
 Best's trial took three days. Relying on testimony that unidentified friends routinely made use of his car (Tr. II 235-36, 250), Best argued chiefly that the government had failed to establish that the rock cocaine was in his possession (Tr. III 287-88). The prosecution called officers Munnelly and Kline, whose testimony did not depart materially from accounts given at the suppression hearing. However, another officer, Investigator Jenkins, gave conflicting testimony, seeming at one juncture (Tr. II 111-12) to say that the beeper had been seized from Best after drugs were found, while indicating elsewhere (Tr. II 115-17, 124) that the beeper was seized before the drugs were spotted (when the government's only valid suspicion of Best centered on the weapons tip). In the wake of Jenkins' testimony, Best did not renew his motion to suppress the beeper or the keys; indeed, the apparent contradiction was not called to the court's attention in any way, nor was it pursued in the cross-examination of Officer Jenkins. The court denied Best's request for a "missing witness" jury instruction but permitted counsel to comment on Starks's absence in his closing argument (Tr. I 36-37; Tr. III 285). The trial concluded with Best's conviction.
 
 II.
 
 12
 On appeal, Best emphasizes that Officer Kline had no basis to suspect that drugs were stashed in the automobile; counsel further suggested, at oral argument, that the cocaine had not really been in "plain view." As to the latter, we will not set aside the district court's determination: Officer Kline testified that he could see (what looked to be) drugs through the window of the parked car (TrM. 41-43); the district court credited this unrebutted testimony, and its doing so can scarcely be called "clearly erroneous." Equally meritless is Best's challenge to the discovery of the contraband: when an officer comes upon an object in "plain view," no ground need be articulated for any prior "suspicion." The only prerequisite imposed by the Constitution is that the officer be lawfully on the premises. See Horton v. California, 110 S.Ct. 2301, 2308-09 (1990). Investigator Kline, beyond question, was lawfully at the scene.
 
 
 13
 That the officer was being "nosy" (TrM. 52) in no way alters the analysis: the Fourth Amendment protects against state intrusions on citizens' "reasonable expectation[s] of privacy," Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring); when an object is readily seen by any member of the public who might look inside a car parked on a public street, its owner's privacy expectations are insubstantial. See WAYNE LAFAVE, 3 SEARCHES & SEIZURES § 7.5, at 127-28 (2d ed. 1987). Nor, as counsel conceded at argument, were the police required to obtain a warrant to seize from the automobile what was almost certain to be cocaine base. See, e.g., United States v. Williams, 822 F.2d 1174, 1184-85 (D.C.Cir.1987); United States v. Caroline, 791 F.2d 197, 200-01 (D.C.Cir.1986).
 
 
 14
 We also reject Best's challenge to the district court's refusal to suppress the beeper and keys. Although the parties dispute vigorously the chronology of the events of December 12, we need not resolve here whether the beeper and key seizure preceded the drug discovery, or whether the second rendered the first "inevitable." Even if Best's motion for suppression--an unilluminating submission--satisfied the specificity requirement of FED.R.CRIM.P. 12(b)(3), see United States v. Mitchell, 951 F.2d 1291, 1296-97 (D.C.Cir.1992) (motion must clearly indicate basis for objection), case law instructs that for an appellate court to consider evidence from a trial (i.e., Jenkins' testimony) in reviewing the denial of a suppression motion, the defendant must have renewed the motion after such evidence was elicited. See United States v. Patrick, No. 90-3178, slip op. at 13 n. 10 (D.C.Cir. Mar. 17, 1992); United States v. Thomas, 875 F.2d 559, 562 n. 2 (6th Cir.1989); FED R.CRIM.P. 12(f), 41(f); cf. Rouse v. United States, 359 F.2d 1014 (D.C.Cir.1966). That instruction from case law preserves our role as a court of review, not one of first view.
 
 
 15
 Finally, the district court did not err in refusing to instruct the jury to hold Starks's absence against the government. A "missing witness" inference is appropriate only when the potential witness is "peculiarly available" to one party, and even then, the decision whether to give the jury instruction is committed to the discretion of the district court. See United States v. Tarantino, 846 F.2d 1384, 1404 (D.C.Cir.) (per curiam), cert. denied, 488 U.S. 840 (1988). Here, ample cause existed to conclude that the rationale for the inference--that silencing potentially adverse testimony best accounts for failure to call a witness--was inapplicable. See Burgess v. United States, 440 F.2d 226, 234 (D.C.Cir.1970) (court must assess case by case whether inference would be natural and reasonable). Starks was in Alabama in the service of the United States military; merely contacting him--to say nothing of flying him to Washington--required dogged effort; and his testimony, though relevant, was far from certain to be exculpatory. The government, moreover, expressed its willingness to continue the case until he returned. Under these circumstances, the district court acted properly in declining to charge the jury to presume the worst, opting instead to allow Best's counsel to mitigate any potential adverse impact by addressing the jury about Starks's absence.
 
 III.
 
 16
 For the foregoing reasons, Best's conviction is affirmed.