In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3017

Elijah Stanciel,

Plaintiff-Appellant,

v.

Richard B. Gramley, Captain Knight,
and Sergeant Eaton,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of Illinois.
No. 94-C-1515--Michael M. Mihm, Judge.

Argued April 3, 2001--Decided September 20, 2001


   Before Posner, Kanne, and Rovner, Circuit
Judges.

   Kanne, Circuit Judge.  Plaintiff-
appellant Elijah Stanciel, who has been
in custody of the Illinois Department of
Corrections ("DOC") since 1988, filed
suit in federal district court pursuant
to 42 U.S.C. sec. 1983 alleging that the
Pontiac Correctional Center ("Pontiac")
and several DOC employees violated his
constitutional and statutory rights. The
district court dismissed fourteen of the
nineteen counts alleged in Stanciel's
complaint and granted summary judgment
for the defendants on two additional
counts. At trial, the jury found for the
defendants on the three remaining claims.
On appeal, Stanciel urges us to find that
the district court erred in dismissing
several of his claims and by failing to
declare a mistrial in response to the
prejudicial statement of one of the
witnesses. He also asks us to find that
his attorney's performance was so
deficient as to require a retrial. We
affirm.

I.  History
A.  Background

   Plaintiff, who has been legally blind
since birth, began serving a sixty-year
sentence for murder at the DOC's maximum
security facility in Pontiac, Illinois in

1988. Upon recommendation of the Pontiac medical director, Stanciel was initially placed in a single cell because of his disability. Some time in the fall of 1992, Stanciel was notified by a prison guard that prison authorities planned to assign another inmate to share his cell. Stanciel was upset by this, so he filed a grievance with the DOC claiming that he was authorized by the medical director to have a single cell. The grievance was denied, and between March 1993 and May 1994 a number of different inmates were housed with Stanciel. Stanciel claims that these cellmates verbally assaulted, physically abused, and stole from him and that he was unable to defend himself or his property because of his disability. He believes that Pontiac authorities specifically assigned dangerous inmates with disciplinary records to share his cell because they were angry at him for filing a grievance with the DOC. Stanciel also contends that Pontiac employees retaliated against him by intentionally leading him into objects such as gates, doors, and rails while guiding him from place to place. On March 24, 1993, Stanciel filed an additional grievance alleging that the DOC had violated the Americans With Disabilities Act, 42 U.S.C. sec. 12131 et seq., ("ADA") by failing to provide access to job assignments and programs such as physical therapy, classes to learn braille, and college courses. The DOC rejected these requests and informed Stanciel that his disability had already been accommodated to the extent possible.

B.  Procedural History

   On September 26, 1994, Stanciel, pro se, filed suit in district court for the Northern District of Illinois pursuant to 42 U.S.C. sec. 1983 alleging that twelve DOC employees ("the DOC defendants") violated his constitutional rights while he was housed at the Pontiac facility. He claimed that the named individuals denied him: (1) the right to shower alone or with just a few other prisoners; (2) a class in braille; (3) college courses for the blind; (4) law books in braille; (5) a cane; (6) suitable job assignments; and (7) assistance writing letters, grievances, and commissary requests. Stanciel's case was subsequently transferred to the Central District of Illinois, and he refiled his complaint in

that court on February 9, 1995. On January 11, 1996, Stanciel filed a first amended complaint that deleted four of the initial defendants and added two new defendants. The DOC defendants moved to dismiss the complaint, but while the motion to dismiss was pending, the district court appointed counsel to represent Stanciel. With the assistance of counsel, Stanciel then filed a second amended complaint. The second amended complaint asserted that Pontiac and eight individual DOC employees/1 led Stanciel into objects, revoked his single cell privileges and shower permit, assigned dangerous inmates to his cell, and failed to accommodate his disability in violation of state law, the ADA, and the Eighth Amendment's prohibition on cruel and unusual punishment.

The DOC defendants filed a motion to dismiss Stanciel's second amended complaint on April 29, 1997. In the motion to dismiss, defendants asserted several defenses including Eleventh Amendment immunity, qualified immunity, and state law sovereign immunity. Defendants' motion also alleged that Pontiac, Lowery, Kelly, and Reider were not timely served, and that Massey was not served at all. Stanciel did not respond to defendants' motion. On May 29, 1997, the district court issued a rule to show cause why the defendants' motion to dismiss should not be granted. Although Stanciel's attorney did respond to the rule to show cause, his response addressed only the issue of whether prisoners are covered by the ADA and did not discuss the remaining issues raised by defendants' motion: whether service was timely, whether the defendants sued in their official capacities were immune from suit, and whether the district court had jurisdiction over plaintiff's state tort claims.

On October 1, 1997, the district court granted in part defendants' motion to dismiss. The district court found that, pursuant to the Local Rule 7.1(B) of the Central District of Illinois, Stanciel had conceded that service on defendants Lowery, Kelly, and Reider was improper by failing to respond to the defendants' contention that those individuals were not timely served./2 The court also invoked Rule 7.1(B) in dismissing Stanciel's official capacity and state

tort claims due to Stanciel's failure to respond to defendants' arguments concerning these issues. With respect to its dismissal of these claims, the court stated, "[i]n its rule to show cause, the court already informed plaintiff's counsel that it would not perform his legal research for him. In light of the plaintiff's failure to oppose the defendants' remaining challenges to the second amended complaint, the motion to dismiss will be deemed confessed in those respects." Stanciel v. Peters, No. 94-1515, slip op. at 3 (C.D. Ill. Oct. 1, 1997) (order granting in part and denying in part defendants' motion for dismissal). Finally, on its own motion, the district court dismissed plaintiff's claims against Pontiac on the basis that the claims were barred by the Eleventh Amendment.

On June 11, 1998, the four remaining defendants-- Peters, Gramley, Eaton, and Knight/3--filed a motion for summary judgment. The district court granted the motion in part--all claims against Peters were dismissed--but allowed Stanciel to proceed with his claims against Gramley, Eaton, and Knight. The district court also vacated its October 1, 1997 order dismissing Pontiac, ruling that Stanciel would be allowed to proceed on his claim that Pontiac violated the ADA. On February 2, 1999, however, the district court issued a rule to show cause why the Illinois DOC--which had been substituted for Pontiac--should not be dismissed under the Eleventh Amendment. Stanciel again failed to respond to the rule to show cause, and the district court dismissed the DOC on March 11, 1999.

After all the dust had settled, only three of Stanciel's nineteen claims remained for decision at trial: (1) whether Captain Knight retaliated against Stanciel for filing a grievance by assigning dangerous inmates to share his cell; (2) whether Sergeant Eaton conspired with Knight to assign dangerous inmates to Stanciel's cell; and (3) whether Gramley, as warden, had knowledge of Knight's and Eaton's actions and failed to remedy the situation. At trial, Stanciel's attorney called three of Stanciel's previous cellmates to testify. All three testified via video conferencing, and they each denied assaulting or stealing from Stanciel. One

of the witnesses, Ronald Robinette, also blurted out "that guy ate his kids" after he finished testifying./4 Trial Tr. at 151. At that point, Stanciel's attorney indicated to the court that he had not heard the witness's statement but asked to have it stricken from the record "whatever it was." Id. The court obliged, noting that he had not heard the witness's comment either. The district judge did not ask the court reporter to read the statement back to him, nor did he attempt to ascertain whether any of the members of the jury had heard the statement. At the conclusion of the evidence, the district court instructed the jury "not to consider . . . testimony or exhibits which were ordered stricken." Id. at 266. On July 31, 1999, the jury returned a verdict in favor of the defendants on all claims. Stanciel now appeals.

II.  Analysis

   On appeal, Stanciel presents several issues which he contends warrant retrial. First, he claims that the district judge improperly dismissed several counts of his complaint based upon his failure to respond to the rule to show cause. Next, he asserts that the district court should have declared a mistrial sua sponte in response to Robinette's statement "that guy ate his kids." Finally, he argues that a retrial is necessary because his attorney's performance was so defective as to deprive him of a fair opportunity to present his case to the jury. We will address each of his claims in turn.

A.  Dismissal of Claims

   The district court dismissed several counts of Stanciel's complaint pursuant to Local Rule 7.1(B) of the Central District of Illinois because Stanciel's attorney failed to respond to the defendants' motion to dismiss, even after the district court issued a rule to show cause why those counts should not be dismissed. Stanciel now challenges these rulings. Specifically, he claims that the district court erred by dismissing: all claims against Lowery, Kelly, and Reider for lack of timely service; state law claims against Reider and Eaton for lack of supplemental jurisdiction; and the ADA claim against the DOC because of Eleventh Amendment immunity.

Local Rule 7.1(B) of the Central District of Illinois provides in relevant part:

Any party opposing [a] motion shall file a response to the motion, including a brief statement of the specific points or propositions of law and supporting authorities upon which the responding party relies; with the exception of motions for summary judgment under Rule 7.1(D)(2), the response shall be filed within fourteen (14) days after service of the motion and memorandum unless the time is extended by the presiding judge for good cause shown. If no response memorandum is filed within the time limit, the presiding judge will presume that there is no opposition and may rule on the motion without further notice to the parties.

Our cases make it clear that a district court's "decision whether to apply [a local] rule strictly or to overlook any transgression is one left to the district court's discretion." Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995); see also Rosemary B. v. Board of Educ. of Cmty. High Sch. Dist. 155, 52 F.3d 156, 158-59 (7th Cir. 1995) (finding that a district court has the power to strike a response to a motion for summary judgment for failure to comply with a local rule). Thus, we review a district court's enforcement of its own rule for abuse of discretion. See Borcky v. Maytag Corp., 248 F.3d 691, 697 (7th Cir. 2001).

In his opening brief, Stanciel does not acknowledge that the district court dismissed the counts in question pursuant to Rule 7.1(B); he proceeds as if the district court's dismissal was on the merits. Instead of presenting an argument as to why the district court abused its discretion, he argues that the district court's decision was substantively incorrect and that we should review the court's decision de novo. Stanciel seems to have recognized his error, however, because he does argue in his reply brief that the district court abused its discretion by dismissing Lowery, Kelly, and Reider for untimely service. At no time, however, has Stanciel presented any evidence that the district court's dismissal of his other claims--the state law or ADA claims-- was an abuse of

discretion. Nor does our review of the record reveal any evidence that the district court improperly applied its own local rule with respect to those claims. On the contrary, it is clear that the district court adequately warned Stanciel of the consequences of failing to respond to defendants' motion. Thus, it was well within the district court's discretion to dismiss Stanciel's state law and ADA claims.

As indicated above, Stanciel has presented an argument that the district court abused its discretion by dismissing defendants Lowery, Kelly, and Reider for lack of timely service. He claims the district court erred by invoking Local Rule 7.1(B) to dismiss defendants for improper service when they were, in fact, timely served. Even if Stanciel is correct, however, he waived the issue by failing to object to the ruling in the trial court. Moreover, we believe that any error did not affect Stanciel's "substantial rights" and was therefore harmless. Fed. R. Civ. P. 61; see also Mason v. Southern Ill. Univ. at Carbondale, 233 F.3d 1036, 1042 (7th Cir. 2000). The allegations against defendant Reider were the same as the claims against defendants Eaton and Knight, both of whom the jury found not liable. Similarly, Stanciel's claims against Lowery and Kelly were virtually identical to his claims against Gramley, who the jury also found not liable. Stanciel has not even attempted to point to any relevant legal or factual differences between the three defendants dismissed for untimely service and those that the jury found not liable at trial. Thus, we find that the district court's decision to dismiss Lowery, Kelly, and Reider for untimely service was, at most, harmless error.

B. Failure to Declare a Mistrial

Stanciel next argues that he is entitled to a new trial because the district court did not declare a mistrial in response to witness Robinette's statement "that guy ate his kids" at the conclusion of his testimony. We review a district judge's decision not to grant a mistrial for abuse of discretion. See United States v. Roe, 210 F.3d 741, 747 (7th Cir. 2000). As indicated above, the record reflects that neither Stanciel's attorney nor the

judge heard Robinette's statement at the time it was made. The district judge did not undertake--and Stanciel's attorney did not request--a determination of whether any of the members of the jury heard the remark. Even if the judge had heard the statement, however, it would not have been an abuse of discretion for the district judge to issue a cautionary instruction rather than grant a mistrial in this case. See United States v. Fulk, 816 F.2d 1202, 1205-06 (7th Cir. 1987).

First, it is highly unlikely that the jurors heard the statement given the fact that neither of the parties nor the judge heard it. Furthermore, it is undisputed that the district judge struck the comment from the record immediately after it was made. He also admonished the jury before they began their deliberations that all testimony stricken from the record should be disregarded. We must "presume [ ] that the jury will follow an instruction to disregard inadmissible evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of that evidence would be devastating." Wilson v. Groaning, 25 F.3d 581, 587 (7th Cir. 1994) (internal quotations omitted). Here, we are not convinced that Robinette's statement--while certainly inflammatory--was such that there is an overwhelming possibility that the jury was unable to disregard it. At the time of Robinette's statement, the jurors were already aware that Stanciel had been convicted of a felony and was housed in a maximum security prison, and they had all represented to the court that they would not let that fact influence their deliberations. In addition, whether or what type of crime Stanciel had committed was not at issue at trial. Therefore, we find that it was not an abuse of discretion for the judge to decide not to grant a mistrial in this case because the prejudicial effect of Robinette's statement, if any, was "sufficiently cured" by the judge's instruction to disregard it.

C. Attorney's Deficient Performance

Stanciel's final argument is that we should reverse and remand for a retrial because his attorney's performance was so inadequate as to deprive him of "a fair opportunity to present [his] case."

Thomas v. Pate, 493 F.2d 151, 158 (7th Cir. 1974), vacated on other grounds sub nom. Canon v. Thomas, 419 U.S. 813, 95 S. Ct. 288, 42 L. Ed. 2d 39 (1974). Although we do not challenge Stanciel's assertion that his attorney's performance was deficient in several respects-- counsel failed to address all of the issues in defendants' motion to dismiss, respond to the court's order to show cause why DOC should not be dismissed, and impeach clearly false testimony of witnesses--we cannot accept his argument that retrial is a proper remedy for defective representation in a civil action. Our cases make it quite clear that there is no Sixth Amendment right to effective assistance of counsel in a civil case. See Bell v. Eastman Kodak Co., 214 F.3d 798, 802 (7th Cir. 2000) (finding that ineffective assistance of counsel is not proper grounds for collaterally attacking a civil judgment); Hutcherson v. Smith, 908 F.2d 243, 245 (7th Cir. 1990) ("[I]t is a well-established principle of law that there is, in general, no constitutional or statutory right to effective assistance of counsel in civil cases."). The proper remedy for inadequate representation in a civil case lies not in dragging the opposing party through another trial, but rather in a malpractice action against the offending attorney. See Pokuta v. Trans World Airlines Inc., 191 F.3d 834, 840 (7th Cir. 1999); Bell, 214 F.3d at 802. Although it is certainly unfortunate that Stanciel's trial attorney failed to provide vigorous representation of his client, it is well established that an attorney's shortcomings do not entitle his client to a new trial in a civil case.

III. Conclusion

   For the reasons stated above, we AFFIRM the decision of the district court.

FOOTNOTES

/1 The second amended complaint named the following DOC employees as defendants: Sergeant Patricia Reider, Captain David Knight, Warden Howard Peters, Warden Richard Gramley, Sergeant Michael Eaton, Officer Massey, Assistant Warden Louis Lowery, and Superintendent Daniel Kelly.

/2 The record reflects (and defendants agree) that Lowery, Kelly, and Reider were, in fact, properly

served. Stanciel's first amended complaint, which added defendants Lowery and Kelly and corrected the spelling of Reider's name, was filed on January 31, 1996. Lowery was served on February 6, 1996; Kelly was served on February 7, 1996; and Reider was re-served on February 7, 1996; therefore, service on all defendants was timely. See Fed. R. Civ. P. 4(m).

/3 Defendant Massey was dismissed on the court's own motion because he had been sued in his official capacity.

/4 Nothing appears in the record from the district court to shed light on why such a statement was made.