# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 21, 2015          Decided August 18, 2015

No. 14-5151

STATE OF TEXAS,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01303)

---

*Matthew H. Frederick*, Deputy Solicitor General, Office of the Attorney General for the State of Texas, argued the cause for appellant. On the briefs were *Ken Paxton*, Attorney General, *Scott A. Keller*, Solicitor General, *Adam W. Aston*, Deputy Solicitor General, and *Arthur C. D'Andrea*, Assistant Solicitor General.

*Paul M. Smith* argued the cause for appellees. With him on the brief were *Jessica Ring Amunson*, *Mark P. Gaber*, *John M. Devaney*, *Marc Erik Elias*, *Robert S. Notzon*, *J. Gerald Hebert*, *Renea Hicks*, and *Chad W. Dunn*.

Before: MILLETT and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: The State of Texas appeals the district court's award of attorneys' fees to three intervenors in Texas's lawsuit under Section 5 of the Voting Rights Act, 52 U.S.C. § 10304. Rather than file a memorandum of points and authorities opposing the three separate motions for attorneys' fees as expressly required by court rules, Texas filed a three-page "Advisory" that presented only a brief contention that the Supreme Court's invalidation of Section 4 of the Voting Rights Act in *Shelby County v. Holder*, 133 S. Ct. 2612 (2013), automatically made Texas a "prevailing party." Beyond that, Texas offered no response to the arguments in the parties' motions and ignored complicating procedural factors in the case. In its "Advisory," Texas also declared that it would not participate any further in its own lawsuit unless "requested to do so" by the district court.

Applying one of its local rules, the district court held that Texas had conceded virtually all of the issues relevant to the motions for attorneys' fees by deliberately choosing not to address them. Rejecting Texas's cursory "Advisory" argument, the district court granted the motions and awarded fees. We affirm because "the discretion to enforce this rule lies wholly with the district court," *FDIC v. Bender*, 127 F.3d 58, 68 (D.C. Cir. 1997), and Texas forfeited any challenge to the district court's exercise of that discretion by failing to even mention the issue in its opening brief in this court.

3

# I

## Legal Framework

### *District of Columbia District Court Rule 7(b)*

District Court Local Rule 7(b) requires that any party opposing a motion must "serve and file a memorandum of points and authorities in opposition to the motion," and that "[i]f such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." D.D.C. Local Rule 7(b). "The rule is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) (citing *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)). "Such a concession acts as [a] waiver, such that a party cannot raise a conceded argument on appeal." *Id.* (internal quotation marks and brackets omitted).

### *The Voting Rights Act*

Congress enacted the Voting Rights Act of 1965, Pub. L. No. 89-110, 79 Stat. 437, "to banish the blight of racial discrimination in voting[.]" *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966). Section 2 of the Act, which applies nationwide, bans any "standard, practice, or procedure" that "results in a denial or abridgement of the right of any citizen * * * to vote on account of race or color [or membership in a language minority group]." 52 U.S.C. § 10301(a).

Section 5, which applies only to certain jurisdictions, provides that, "[w]henever" a covered jurisdiction seeks to

change any voting procedure, it must first obtain administrative preclearance from the Attorney General or judicial preclearance from a three-judge court in the United States District Court for the District of Columbia. 52 U.S.C. § 10304. A jurisdiction may obtain preclearance only if it proves that its change in voting procedures "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color [or membership in a language minority group]." *Id.* § 10304(a). Section 4 provides criteria, commonly known as the "coverage formula," that determine which jurisdictions are subject to the preclearance requirement. *See id.* § 10303(b); *see also Shelby County*, 133 S. Ct. at 2619–2620.

In *Shelby County*, the Supreme Court declared Section 4's coverage formula unconstitutional. *See* 133 S. Ct. at 2630–2631. The Court was explicit that it was "issu[ing] no holding on § 5 itself, only on the coverage formula." *Id.* at 2631.

The Voting Rights Act also includes an attorneys' fees provision that states: "In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e).

## Factual and Procedural Background

Following the 2010 census, the Texas Legislature enacted redistricting plans for the Texas House of Representatives, the Texas Senate, and the United States House of Representatives. At the time, Texas was a covered

jurisdiction under Section 5 of the Voting Rights Act, so it had to obtain administrative or judicial preclearance before any redistricting plan could take effect. Texas chose to file suit before a three-judge panel of the United States District Court for the District of Columbia, rather than to seek administrative preclearance. *See Texas v. United States*, 887 F. Supp. 2d 133, 138 (D.D.C. 2012).

In its complaint, Texas sought a declaratory judgment that its redistricting plans complied with Section 5. Texas made no challenge to the constitutionality of either Section 5's preclearance requirement or Section 4's coverage formula. Complaint 1, J.A. 66 ("This complaint is filed under the assumption that Section 5 complies with the United States Constitution."). Texas purported initially to "reserve all applicable legal claims * * * pending" the district court's "decisions in *Shelby County, Ala. v. Holder*, No. 10-00651[] (D.D.C.), and *Laroque v. Holder*, No. 10-00561 (D.D.C.)," two cases in which different plaintiffs had challenged Section 5's constitutionality. Complaint 1–2, J.A. 66–67. But when the district court asked Texas whether it wanted to amend its complaint to include any constitutional claims, 12/7/2011 Tr. at 32, ECF No. 113, Texas told the court that it did not want to do so because it was "eager" to go to trial on its preclearance claim "as early as possible," 12/12/2011 Tr. at 6, 10, ECF No. 114.

The United States opposed preclearance of the congressional and state house plans, but not the state senate plan. *Texas*, 887 F. Supp. 2d at 138. The district court permitted seven parties to intervene as defendants to oppose preclearance, and their objections collectively challenged all three plans. *Id.* at 138 & n.2. Three of those intervenors are appellees: two groups of Texas voters and office-holders and

the Texas Conference of NAACP Branches (collectively, "Intervenors").

After conducting a two-week trial, the district court agreed with the Intervenors and denied preclearance of all three plans on August 28, 2012. *Texas*, 887 F. Supp. 2d at 138–139. The court found that Texas's congressional and state house maps both had a discriminatory effect in certain districts, *id.* at 153, and that the congressional map "was motivated, at least in part, by discriminatory intent," *id.* at 161, 166. Disagreeing with both Texas and the Justice Department, the court also concluded that the state senate map "was enacted with discriminatory purpose" as to a particular district. *Id.* at 166.

While the preclearance proceedings were ongoing, a different three-judge district court in the Western District of Texas was considering Section 2 and constitutional challenges to Texas's redistricting maps that had been brought by various plaintiffs, including three of the intervenor groups from the D.C. preclearance case. *See Davis v. Perry*, No. SA-11-CA-788 (W.D. Tex. 2011); *Perez v. Perry*, No. 5:11-cv-00360-OLG-JES-XR (W.D. Tex. 2011). Because the D.C. preclearance suit was not resolved in time for the 2012 primaries and general election, the Texas district court imposed interim plans to govern those elections under the standards dictated by *Perry v. Perez*, 132 S. Ct. 934 (2012). *See Texas*, 887 F. Supp. 2d at 139; *see also Davis v. Perry*, No. SA-11-CV-788, 2011 WL 6207134, at *1 (W.D. Tex. Nov. 23, 2011); *Perez v. Perry*, 835 F. Supp. 2d 209, 211 (W.D. Tex. 2011).

After the D.C. district court denied preclearance of Texas's redistricting plans, and while Texas's appeal from that ruling was pending in the Supreme Court, Texas

Governor Rick Perry called a special session of the Texas Legislature to repeal and replace the challenged plans. On June 23, 2013, the Legislature adopted plans largely mirroring those that the Texas district court had imposed on an interim basis. Governor Perry signed the new redistricting plans into law on June 26, 2013.

On June 24, 2013, one of the intervenor groups from the preclearance case filed a motion asking the Supreme Court to dismiss Texas's appeal as moot based on the Legislature's repeal of the maps that were the subject of the litigation. The next day—one day before Governor Perry signed those plans into law—the Supreme Court issued its opinion in *Shelby County*, holding unconstitutional the coverage formula contained in Section 4 of the Voting Rights Act. 133 S. Ct. at 2631.

On June 27, 2013—four days after the Texas Legislature's adoption of new redistricting plans and after those plans had already taken effect—the Supreme Court vacated the D.C. district court's order denying Texas preclearance, and "remanded for further consideration in light of *Shelby County v. Holder* * * * and the suggestion of mootness" of one of the intervenor groups. *Texas v. United States*, 133 S. Ct. 2885 (2013) (mem.); J.A. 431.

On remand, Texas filed a motion to dismiss the preclearance action as moot, arguing that both the enactment of new redistricting maps and *Shelby County* eliminated any basis for the court's jurisdiction. The three-judge district court agreed and dismissed the case, concluding that Texas's "claims were mooted by *Shelby County* and the adoption of superseding redistricting plans." J.A. 434. The court added that the Intervenors would "remain free to seek attorneys'

fees after dismissal." J.A. 435. The Intervenors did just that by promptly filing three separate motions for attorneys' fees.

Texas did not file an opposition to those motions. Instead, it filed a three-page "Advisory" declaring that it was the prevailing party based on *Shelby County* and that "the State d[id] not intend to respond" to the motions for attorneys' fees "unless requested to do so by the Court." J.A. 798–800. The Advisory did not mention the legislative repeal of Texas's redistricting plans and presented no response to Intervenors' argument that this repeal, and the mootness it caused before the judgment denying preclearance was vacated, rendered them prevailing parties. Following the dissolution of the three-judge district court, the pending motions for attorneys' fees were remanded to a single district judge for resolution.

The district court entered an order on June 18, 2014, awarding the requested attorneys' fees. The court concluded that Texas's "Advisory" "present[ed] no opposition on the applicable law," *Texas v. United States*, 49 F. Supp. 3d 27, 31 (D.D.C. 2014), and held that, under Local Rule 7(b), "Texas has waived any argument as to" "the eligibility of Fee Applicants for fee awards * * * or the prevailing-party status of Fee Applicants at the time the Court denied preclearance to Texas and thereafter, when Texas enacted new redistricting maps," *Texas*, 49 F. Supp. 3d at 39–40.

**II**

**Analysis**

*Texas's Waiver and Double Forfeiture*

We review the district court's decision enforcing its local rules for abuse of discretion. *Bender*, 127 F.3d at 67. We also review a district court's decision on a motion for attorneys' fees for abuse of discretion. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). A "district court abuses its discretion if it did not apply the correct legal standard . . . or if it misapprehended the underlying substantive law." *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (internal quotation marks omitted; ellipsis in original). We examine any such legal questions *de novo*. *Brayton*, 641 F.3d at 524.

The Intervenors sought attorneys' fees under 52 U.S.C. § 10310(e), and 42 U.S.C. § 1988(b), both of which authorize fee awards in certain civil rights cases to the "prevailing party." *See Donnell v. United States*, 682 F.2d 240, 245 & n.7 (D.C. Cir. 1982) (both provisions "encourag[e] private litigants to act as 'private attorneys general' in seeking to vindicate the civil rights laws" and "should be construed similarly").

In its opening brief, Texas presents a bevy of arguments for why none of the Intervenors is a "prevailing party" within the meaning of those statutes. The problem is that Texas did not raise a single one of those arguments in the district court. Instead, its Advisory trumpeted *Shelby County* and declared that to be the end of the story, as a matter of law. Given that deliberate refusal to join the issues raised by the motions, the district court applied Local Rule 7(b) and concluded that

Texas had waived any argument that Intervenors were not prevailing parties "at the time the Court denied preclearance to Texas and thereafter, when Texas enacted new redistricting maps." *Texas*, 49 F. Supp. 3d at 40.

Local Rule 7(b) advises litigants that "the Court may treat [a] motion as conceded" if the party opposing a motion fails timely to "serve and file a memorandum of points and authorities in opposition to the motion." D.D.C. Local Rule 7(b). The rule "is a docket-management tool that facilitates efficient and effective resolution of motions by requiring the prompt joining of issues," *Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004), and judicious enforcement of the rule "ensures * * * that litigants argue their causes on a level playing field," *id.* at 1295 (quoting *English-Speaking Union v. Johnson*, 353 F.3d 1013, 1021 (D.C. Cir. 2004)). In applying Rule 7(b) to Texas's "Advisory," the district court explained that the rule "applies not only to instances where a litigant entirely fails to oppose a motion but also where a party files an opposition that addresses only *some* of the arguments raised in the underlying motion," and that in "the latter instance, * * * courts may deem the unaddressed arguments as conceded." *Texas*, 49 F. Supp. 3d at 39; *see, e.g.*, *Institute For Policy Studies v. CIA*, 246 F.R.D. 380, 386 n.5 (D.D.C. 2007) ("[W]here a party files an opposition to a motion and addresses only certain arguments raised by the movant, this court routinely treats the unaddressed arguments as conceded pursuant to Local Rule 7(b).").[1]

---

[1] A member of our court has questioned whether Local Rule 7(b) may properly be applied to deem as conceded an unopposed motion for summary judgment. *See Grimes v. District of Columbia*, No. 13-7038, 2015 WL 4430157, at *11–13 (D.C. Cir. July 21, 2015) (Griffith, J., concurring) (arguing that such an application of Rule 7(b) conflicts with Federal Rule of Civil Procedure 56 and that, in an appropriate case, reconsideration of circuit precedent may be

Had Texas bothered to challenge the district court's interpretation or enforcement of Local Rule 7(b) by arguing the issue in this court, it would have faced an uphill climb. Rules are rules, and basic fairness requires that they be applied evenhandedly to all litigants. Rule 7(b) (or its materially identical predecessor, Local Rule 108(b)) has been in force for nearly three decades, *see Graetz v. District of Columbia Public Schools*, Civ. A. No. 86-293, 1987 WL 8527, at *1 (D.D.C. March 3, 1987), so Texas was on full and fair notice of its application both when it initiated its preclearance lawsuit and when it chose to submit its "Advisory" at the attorneys' fee stage. Because a district court's local rules "have 'the force of law,'" *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quoting *Weil v. Neary*, 278 U.S. 160, 169 (1929)), the State of Texas—like all lawyers and litigants—is "duty bound to comply with them," *In re Jarvis*, 53 F.3d 416, 422 (1st Cir. 1995).

We have repeatedly held, moreover, that a material failure to follow the rules in district court can doom a party's case. *See, e.g.*, *Geller v. Randi*, 40 F.3d 1300, 1303–1304 (D.C. Cir. 1994) ("When Geller failed to respond, he conceded a violation of Rule 11 under Local Rule 108(b) [Local Rule 7(b)'s predecessor]; he cannot now argue the merits of his Rule 11 defense."); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033–1034 (D.C. Cir. 1988) (failure to designate and reference triable facts under Federal Rule of Civil Procedure 56(c) and Local Rule 108(h) was

warranted). That concern is not implicated here because this case does not involve a motion for summary judgment under Federal Rule of Civil Procedure 56 and, in any event, Texas has forfeited any similar challenge to the district court's interpretation or application of Local Rule 7(b), *see infra* pp. 13–14.

fatal to appellant's opposition to motion for summary judgment).

Local Rule 7(b) has received the same respect: "[A]s we have often observed, '[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule.'" *Fox*, 389 F.3d at 1295 (quoting *Twelve John Does v. District of Columbia,* 117 F.3d 571, 577 (D.C. Cir. 1997)). "[T]he discretion to enforce this rule lies wholly with the district court." *Bender*, 127 F.3d at 68 (D.C. Cir. 1997). And "we have yet to find that a district court's enforcement of this rule constituted" an abuse of that discretion. *Wannall*, 775 F.3d at 428 (internal quotation marks omitted). We will not do so for the first time here.

In deferring to the district court's enforcement of its local rule requiring the timely filing of oppositions that actually address the contentions of the movant, we are in good company. Local Rule 7.1(b) of the Central District of Illinois, for example, is materially identical to the rule at issue here, and it too has been enforced by deeming as conceded any of a movant's arguments to which the opposing party fails to respond. *See Stanciel v. Gramley*, 267 F.3d 575, 578–580 (7th Cir. 2001) (district court "was well within its discretion" when it enforced its Local Rule 7.1(b) by deeming unaddressed issues to be conceded, which led to partial dismissal of plaintiff's claims). The district court in *Stanciel* explained—and the Seventh Circuit agreed—that the court had no obligation to "perform * * * legal research for [the opposing party]." 267 F.3d at 578. So too here.[2]

---

[2] Every circuit, in fact, defers to their district courts' interpretation and enforcement of local rules. *See*, *e.g.*, *Crowley v. L.L. Bean, Inc.*, 361 F.3d 22, 25 (1st Cir. 2004) (A district court's

Texas's tactical choice in district court has distinct appellate repercussions as well. We are "a court of review, not one of first view," *United States v. Best*, 961 F.2d 964, 1992 WL 96354, at \*3 (D.C. Cir. 1992) (unpublished), so we rarely entertain arguments on appeal that were not first presented to the district court, *see, e.g.*, *Pettaway v. Teachers Ins. & Annuity Ass'n of America*, 644 F.3d 427, 437 (D.C. Cir. 2011) (refusing to consider claim that district court violated a local rule because appellant failed to make that argument before the district court). And we can find no instance when we made an exception to that rule because the party's chosen strategy of backhanding the issues in district court backfired.

Texas's decision not to argue—or even mention—the Rule 7(b) issue in its opening brief has made an already

interpretation and application of local procedural rules receives "a special degree of deference—above and beyond the traditional standards of decisionmaking and appellate oversight[.]"); *Whitfield v. Scully*, 241 F.3d 264, 270–271 (2d Cir. 2001) ("We accord considerable deference to the district court's interpretation of its own Local Rule."); *Government of Virgin Islands v. Mills*, 634 F.3d 746, 750 (3d Cir. 2011) (same); *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007) (same); *Jackson v. Beard*, 828 F.2d 1077, 1079 (4th Cir. 1987) (same); *In re Adams*, 734 F.2d 1094, 1102 (5th Cir. 1984) (same); *Martinez v. Thrifty Drug & Discount Co.*, 593 F.2d 992, 994 (10th Cir. 1979) (same); *Clark v. Housing Auth. of City of Alma*, 971 F.2d 723, 727 (11th Cir. 1992) (same); *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (similar); *Northwest Bank & Trust Co. v. First Illinois Nat'l Bank,* 354 F.3d 721, 725 (8th Cir. 2003) (similar); *Smith v. Village of Maywood*, 970 F.2d 397, 400 (7th Cir. 1992) (similar); *see also Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) ("This court defers to the district court when interpreting and enforcing local rules[.]"). The federal court system could not fairly function otherwise.

arduous appellate climb Sisyphean. As an appellate court, we sit not "as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before [us]." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.). Because Texas failed to challenge the district court's enforcement of Rule 7(b) in its opening brief, any challenge to the central ground on which the district court disposed of this case is forfeited and we will not address it. *See Fox v. Government of District of Columbia*, No. 14-7042, 2015 WL 4385290, at *4 (D.C. Cir. July 17, 2015) (appellant forfeited challenge to dispositive issue by failing to argue it in her opening brief); *Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 418 (D.C. Cir. 1996) (An issue is "barred from consideration by this court" when the appellant "d[oes] not raise the issue in its opening brief."); *Natural Resources Defense Council, Inc. v. EPA*, 25 F.3d 1063, 1071 n.4 (D.C. Cir. 1994) ("We have said before, and we say again, that ordinarily we will not consider arguments raised for the first time in a reply brief[.]") (quoting *Pennsylvania Elec. Co. v. FERC*, 11 F.3d 207, 209 (D.C. Cir. 1993)). So the long and the short of it is that the bulk of Texas's arguments is waived and forfeited twice over.

### *The Impact of Intervening Legislation and* Shelby County

The sole argument that Texas did present in its Advisory and in its opening brief here—and thus the only argument that is properly preserved for review—is that the Supreme Court's decision in *Shelby County* made Texas the prevailing party in this case as a categorical matter of law the instant the Supreme Court announced its decision. To support its claim, Texas points to the Supreme Court's June 27, 2013 order that vacated the district court's judgment denying Texas preclearance and "remanded * * * for further consideration in

light of *Shelby County v. Holder* \* \* \* and the suggestion of mootness of appellees[.]" *Texas*, 133 S. Ct. at 2885; J.A. 431. That order, Texas maintains, demonstrates that the Supreme Court decided that Texas had won its appeal and was necessarily the prevailing party for attorneys' fees purposes.

Texas is mistaken. *First*, Texas bears little resemblance to a prevailing party. Texas chose to seek judicial preclearance rather than administrative preclearance, and did so expressly on the assumption of the preclearance requirement's constitutionality. To say that Texas "prevailed" in this suit because a different litigant in a different suit won on different grounds that Texas specifically told the district court it would *not* raise is, to say the least, an unnatural use of the word "prevailing." It certainly is not a definition that the district court was legally bound to adopt without any elucidating argument by Texas.

*Second*, Texas's argument misconstrues the Supreme Court's June 27th order. Under the Supreme Court's "grant, vacate, and remand" ("GVR") practice, the Court issues a single order granting review, vacating the judgment below, and remanding for further consideration in light of some intervening development (often a Supreme Court decision). As the Supreme Court has explained, a GVR order is "potentially appropriate" when

> intervening developments, or recent developments that we have reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation[.]

*Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (per curiam).

Importantly, it is well-settled that a GVR has no precedential weight and does not dictate how the lower court should rule on remand. *See Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) ("We also reject Tyler's attempt to find support in our [GVR] disposition. * * * Our order * * * was not a final determination on the merits."); *In re Sealed Case*, 246 F.3d 696, 699 (D.C. Cir. 2001) ("[A GVR order] may indicate a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, [but] it does not amount to a final determination on the merits.") (internal quotation marks and citations omitted); *see also Henry v. City of Rock Hill*, 376 U.S. 776, 777 (1964) ("The South Carolina Supreme Court correctly concluded that our earlier [GVR] did not amount to a final determination on the merits.").

The Supreme Court's June 27th order is plainly a GVR. True, there is no "grant" of a certiorari petition by Texas, but that is only because Texas did not file a petition for writ of certiorari; it appealed directly to the Supreme Court. *See* 52 U.S.C. § 10304(a) (authorizing "appeal" of three-judge district court's judgment directly to the Supreme Court). The Supreme Court's order in this case mirrors precisely how vacate-and-remand orders have been framed in other direct appeals to the Supreme Court.[3]

---

[3] *See*, *e.g.*, *Cantor v. Personhuballah*, 135 S. Ct. 1699 (2015) (mem.) ("On appeal from the United States District Court for the Eastern District of Virginia. Judgment vacated, and case remanded to the United States District Court for the Eastern District of Virginia for further consideration in light of *Alabama Legislative Black Caucus v. Alabama,* 575 U.S. —— (2015)."); *James v. FEC*, 134 S. Ct. 1806 (2014) (mem.) ("Appeal from the United States

*Third*, even if Texas thought the import of *Shelby County* obvious, the Supreme Court's disposition suggests otherwise. "It simply indicated that, in light of intervening developments, there was a reasonable probability that the Court of Appeals would reject a legal premise on which it relied and which may affect the outcome of the litigation." *Tyler*, 533 U.S. at 666 n.6. Because that disposition "did not amount to a final determination on the merits," *Henry*, 376 U.S. at 777, it did not dictate any particular result on remand. It certainly did not declare Texas the victor.

*Fourth*, Texas assails the district court's reliance on the State's mooting of the case through legislative repeal and replacement of its redistricting plans. In so doing, the district court hewed to this circuit's caselaw authorizing the award of attorneys' fees to parties who obtain a favorable judgment that is vacated on appeal because a subsequent legislative enactment moots the case. *See National Black Police Ass'n v. District of Columbia Board of Elections & Ethics*, 168 F.3d 525, 528 (D.C. Cir. 1999) (upholding award of attorneys' fees where plaintiffs obtained a favorable district court judgment that was vacated as moot following legislative repeal of the law at issue while the appeal was pending). Texas argues that this case is different because *Shelby County* mooted its case the moment the Supreme Court announced the opinion, and so the Texas Legislature's repeal of the redistricting plans, which

---

District Court for the District of Columbia. Judgment vacated, and case remanded to the United States District Court for the District of Columbia for further consideration in light of *McCutcheon v. Federal Election Comm'n*, [134 S. Ct. 1434 (2014)]."); *Texas v. Holder*, 133 S. Ct. 2886 (2013) (mem.) ("On appeal from the United States District Court for the District of Columbia. Judgment vacated, and case remanded to the United States District Court for the District of Columbia for further consideration in light of *Shelby County v. Holder*, —— U.S. ——, 133 S.Ct. 2612 (2013).").

happened a day before *Shelby County* but did not take effect until signed by the Governor two days later, could not have mooted the case.

Texas never made that argument in the district court. The State's three-page Advisory did not cite *National Black Police Association* or any of the other cases on which the Intervenors based their claim of prevailing-party status and addressed the intervening legislative enactment. Indeed, the Advisory did not even mention mootness, the proper legal test for prevailing-party status, or a single precedent on attorneys' fees. The district court thus applied Local Rule 7(b) and concluded that Texas had waived any argument that Intervenors were not prevailing parties as of the date of Texas's enactment of new redistricting plans. *Texas*, 49 F. Supp. 3d at 39–40. And Texas has not challenged that waiver finding on appeal.

Texas, moreover, is wrong to argue now that its legislative adoption of new voting districts did not contribute to mooting the case. Rather, Texas was right the first time when, in moving to dismiss its suit as moot following the Supreme Court's remand, it argued that both the state legislation and *Shelby County* mooted the case. J.A. 403–404 (arguing that the Texas Legislature's enactment of new redistricting plans "on June 23, 2013," combined with the *Shelby County* decision two days later, together eliminated "any basis for this Court's jurisdiction"). The three-judge district court agreed with Texas that its "claims were mooted by *Shelby County* and the adoption of superseding redistricting plans." J.A. 434. Beyond that, any questions concerning how the short time between those two events affected the Intervenors' status as prevailing parties is an issue that Texas chose to leave entirely unaddressed in district court, and thus it has forfeited its arguments on that issue here.

19

*Fifth*, *Shelby County* could not have instantly mooted Texas's case as a categorical matter of law. As a formal matter, Supreme Court judgments on review of a federal court decision do not take effect until at least 25 days after they are announced, when the Court issues a certified copy of its opinion and judgment in lieu of a formal mandate. *See* SUP. CT. R. 45. Parties may file a petition for rehearing during that 25-day period, SUP. CT. R. 44, which "result[s] in an automatic stay of judgment or mandate unless the Court otherwise specifically directs," S. Shapiro, K. Geller, T. Bishop, E. Hartnett, & D. Himmelfarb, Supreme Court Practice 830 (10th ed. 2013); *see* SUP. CT. R. 45. When the Court wants its judgment to take effect sooner, it says so. *Perry*, 132 S. Ct. at 944 ("The judgment shall issue forthwith."); *Purcell v. Gonzalez*, 549 U.S. 1, 6 (2006) ("Pursuant to this Court's Rule 45.3, the Clerk is directed to issue the judgment in these cases forthwith."). The judgment in *Shelby County* did not issue until July 29, 2013, over a month after Texas's new redistricting maps took effect. *See Shelby County v. Holder*, No. 12-96, Docket.

Nor was it at all settled that Texas could benefit from *Shelby County* in this case, given that Texas told the district court directly that it was not challenging the constitutionality of the preclearance regime. And even if Texas had preserved a challenge to Section 5, the Supreme Court did not invalidate Section 5; it only invalidated the formula used to determine which jurisdictions would be required to seek preclearance. It was thus an open question—one that Texas chose not to litigate and that the adoption of Texas's new maps mooted—whether Texas had waived the application of *Shelby County* to its case.[4]

---

[4] After this case was briefed, the Fifth Circuit denied attorneys' fees in *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015). Texas has

In short, various procedural and substantive complexities close the door on Texas's claim that *Shelby County* instantly resolved the attorneys' fees question in this case. Texas could have addressed those complexities by briefing them in an opposition to the Intervenors' motions for attorneys' fees, but chose not to do so. Texas also could have challenged the district court's enforcement of its local rule to bar consideration of those issues on appeal, but it chose not to do that in its opening brief either. Texas gets no second bite at the apple now. What little argument Texas did advance in its "Advisory" provides an insufficient basis for overturning the district court's award of attorneys' fees.

---

not argued that the Fifth Circuit's decision bears on anything in this case. And that decision would be of no help to Texas had it tried. The Fifth Circuit grounded its decision on the district court's inability to decide the merits of the Section 5 claim because, on that issue, the court only "had jurisdiction to * * * defer to the district court in D.C." *Id.* at 217. Nor had that district court evaluated the merits of the plaintiffs' Section 2 or constitutional claims. Those plaintiffs thus were not prevailing parties eligible for attorneys' fees because they "failed to achieve judicially-sanctioned relief that sufficiently addressed the merits of any of their claims." *Id.* at 219. Here, by contrast, the Intervenors obtained a final judgment on the merits, after a two-week trial and accompanied by a lengthy opinion, that was broader than even the Justice Department had sought. That is the type of judicial relief on the merits that provides a proper basis for an award of attorneys' fees. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001) (identifying judgments on the merits and court-ordered consent decrees).

## III

## Conclusion

The district court's order awarding attorneys' fees to the Intervenors is affirmed.

*So ordered.*