# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 20, 2018        Decided June 8, 2018

No. 17-5110

WASHINGTON ALLIANCE OF TECHNOLOGY WORKERS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ET
AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01170)

*John M. Miano* argued the cause and filed briefs for the appellant. *Dale L. Wilcox* and *Michael M. Hethmon* entered appearances.

*Scott G. Stewart*, Attorney, United States Department of Justice, argued the cause for the appellees. *Glenn M. Girdharry* and *Erez Reuveni*, Assistant Directors, and *Joshua S. Press*, Trial Attorney, were with him on the brief.

Before: HENDERSON, *Circuit Judge*, and EDWARDS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Washington Alliance of Technology Workers (Washtech), a union representing workers throughout the country in the Science, Technology, Engineering and Mathematics (STEM) labor market, challenges United States Department of Homeland Security (DHS) regulations that allow nonimmigrant aliens temporarily admitted to the country as students to remain in the country for up to three years after finishing a STEM degree to pursue work related to their degree. Washtech's complaint alleged that the regulations exceed their statutory authority, suffer from multiple procedural deficiencies and are arbitrary and capricious. The district court dismissed Washtech's complaint in full, relying on a mixture of grounds—standing; failure to state a plausible claim for relief; and a deficient opposition to the DHS's motion to dismiss—depending on the precise claim at issue. As detailed below, we affirm in part and reverse and remand in part.

## I.  BACKGROUND

The Immigration and Nationality Act of 1952 (INA), 8 U.S.C. §§ 1101 *et seq*., authorizes the DHS to admit certain classes of nonimmigrant aliens. Nonimmigrant aliens are foreign nationals who enter the country for fixed, temporary periods of time pursuant to a visa. The F-1 student visa authorizes admission of "an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing . . . a course of study . . . at" certain academic institutions, including colleges and universities. 8 U.S.C. § 1101(a)(15)(F)(i).

The Congress provided that "admission to the United States of any alien as a nonimmigrant shall be for such time

and under such conditions as the" DHS Secretary[1] "may by regulations prescribe." *Id.* § 1184(a)(1). The DHS has three times—in 1992, 2008 and 2016—promulgated regulations that allow nonimmigrant aliens with student visas to remain in the country after finishing their degree to participate in the workforce for a specified period of time. *See Wash. All. of Tech. Workers v. DHS*, 857 F.3d 907, 909–10 (D.C. Cir. 2017).

## A. 1992 Regulation

In 1992, the DHS promulgated a regulation that established an "optional practical training" (OPT) program for a nonimmigrant admitted with an F-1 student visa. Pre-Completion Interval Training; F-1 Student Work Authorization, 57 Fed. Reg. 31954 (July 20, 1992) (1992 Rule). The regulation allowed a student to "apply . . . for authorization for temporary employment for [optional] practical training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii)(A) (1992). The student "may be authorized" to engage in such employment "[a]fter completion of all course requirements for the degree" or "[a]fter completion of the course of study" for which the student was granted the F-1 visa. *Id.* § 214.2(f)(10)(ii)(A)(3), (4). The 1992 Rule authorized a student to remain in the country for one year after completing

---

[1] The Congress originally delegated authority to administer the INA to the Immigration and Naturalization Service, housed in the United States Department of Justice. In 2002, when it created the Department of Homeland Security, the Congress transferred responsibility for administering the INA to the DHS Secretary. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005) (citing 6 U.S.C. §§ 251(2), 252(a)(3), 271(b)). For consistency and ease of reference, we refer to the DHS throughout the opinion as the responsible government agency even though the INS exercised the relevant authority before 2002.

his degree, *see id.* § 214.2(f)(11), if "engag[ed] in authorized practical training following completion of studies," *id.* § 214.2(f)(5)(i).

## B. 2008 Regulation

In 2008, the DHS promulgated a regulation that authorized an F-1 student visa holder with a STEM degree who was participating in the OPT program to apply for an extension of OPT of up to seventeen months. Extending Period of Optional Practical Training by 17 Months for F-1 Nonimmigrant Students With STEM Degrees and Expanding Cap-Gap Relief for All F-1 Students With Pending H-1B Petitions, 73 Fed. Reg. 18944 (Apr. 8, 2008) (2008 Rule); 8 C.F.R. § 214.2(f)(10)(ii)(C) (2008). In 2014, Washtech filed a complaint challenging the 2008 Rule and the district court ultimately vacated the 2008 Rule. *Wash. All. of Tech. Workers v. DHS* (*Washtech I*), 156 F. Supp. 3d 123 (D.D.C. 2015). Although the district court held that the DHS had statutory authority to create the OPT program, *id.* at 137–45, it held that the DHS improperly issued the 2008 Rule without notice and comment, *id.* at 145–47. The district court stayed vacatur to allow the DHS to correct its error. *Id.* at 147–49.

## C. 2016 Regulation

After *Washtech I*, the DHS issued a notice of proposed rulemaking with a request for comments. 80 Fed. Reg. 63376 (Oct. 19, 2015). After comments, the DHS issued its final rule. Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 81 Fed. Reg. 13040 (Mar. 11, 2016) (2016 Rule). The 2016 Rule authorizes an F-1 student visa holder with a STEM degree who is participating in the OPT program to "apply for an extension of OPT" of up to twenty-four months. 8 C.F.R. § 214.2(f)(10)(ii)(C) (2016).

The 2016 Rule includes certain "safeguards" against "adverse [effects] on U.S. workers," 81 Fed. Reg. at 13042: employers who want to participate in the program must attest, *inter alia*, that the OPT student "will not replace a full- or part-time, temporary or permanent U.S. worker," 8 C.F.R. § 214.2(f)(10)(ii)(C)(10)(ii), and that the "duties, hours, and compensation" of OPT workers "[will] be commensurate with" those of "similarly situated U.S. workers," *id.* § 214.2(f)(10)(ii)(C)(8).

After the 2016 Rule was promulgated, we "vacate[d]" as "moot" the district court's decision invalidating the 2008 Rule "because the 2008 Rule is no longer in effect." *Wash. All. of Tech. Workers v. DHS* (*Washtech II*), 650 F. App'x 13, 14 (D.C. Cir. 2016).

### D.  Procedural History

In June 2016, Washtech filed a complaint challenging both the 1992 Rule and the 2016 Rule. Washtech brought four counts, alleging: (1) the 1992 Rule "exceeds" the DHS's statutory "authority"; (2) the 2016 Rule "is in excess of" the DHS's statutory "authority"; (3) the DHS committed three procedural violations in promulgating the 2016 Rule; and (4) the 2016 Rule "was implemented arbitrarily and capriciously." Compl. ¶¶ 54–84.

The DHS moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(1) for lack of jurisdiction because Washtech did not have standing and pursuant to FRCP 12(b)(6) for failure to state a claim for relief. Washtech timely filed a response in opposition to the motion to dismiss.

The district court granted the DHS's motion to dismiss. *Wash. All. of Tech. Workers v. DHS* (*Washtech III*), 249 F.

Supp. 3d 524 (D.D.C. 2017). It dismissed Count I—the challenge to the 1992 Rule's statutory authority—on two alternative grounds. *First*, the district court held that Washtech "conceded" its lack of standing because it "fail[ed] to address the Government's argument that it lacks standing" in its opposition to the motion to dismiss. *Id.* at 536. *Second*, the district court held that Washtech in fact did not have standing. *Id.* at 536–37. The district court dismissed Count II—the challenge to the 2016 Rule's statutory authority—because Washtech "conceded" that it failed to state a claim for relief by "fail[ing] to address the Government's arguments" that Washtech insufficiently pleaded the claim in its opposition to the motion to dismiss. *Id.* at 555. The district court dismissed Count III on two alternative grounds. *First*, the district court held that Washtech conceded that it failed to state a claim for relief by not addressing the Government's arguments in its opposition to the motion to dismiss. *Id.* at 554. *Second*, the district court held that Washtech did not sufficiently plead a cause of action in Count III. *Id.* at 555. The district court dismissed Count IV for failure to state a claim for relief. *Id.* at 555–56. This appeal followed.

## II. ANALYSIS

The "allegations of the complaint are generally taken as true for purposes of a motion to dismiss." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (per curiam). We review the district court's dismissal of a complaint for lack of standing or for failure to state a claim *de novo*. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (standing); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (failure to state a claim). We review the district court's dismissal of a complaint for failure to respond to a motion to dismiss for abuse of discretion. *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004).

We first address Washtech's standing. We conclude that Washtech had standing to bring Counts II, III and IV—all challenges to the 2016 Rule—under the doctrine of competitor standing. We do not decide whether Washtech had standing to bring Count I—the challenge to the 1992 Rule—because we affirm dismissal of Count I on the alternative jurisdictional ground of untimeliness. We then address the district court's dismissal of Counts II, III and IV. We reverse dismissal of Count II because we believe the district court abused its discretion in dismissing a plausible claim for relief based on Washtech's inadequate opposition to the DHS's motion to dismiss. On remand, the district court must consider whether the reopening doctrine applies to the issue raised in Count II. We affirm the district court's dismissal of Counts III and IV pursuant to FRCP 12(b)(6) because neither states a plausible claim for relief.

## A. FRCP 12(b)(1) challenges

The DHS challenges Washtech's standing to bring all four counts. Washtech "must demonstrate standing for each claim [it] seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). We address first Washtech's standing to bring Counts II, III and IV—its challenges to the 2016 OPT Rule. Washtech "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* at 342 (internal quotation omitted). We believe Washtech has standing under the competitor standing doctrine.[2] We address the three standing requirements in turn.

---

[2] Washtech asserted multiple alternative standing theories in its brief. Because we dismiss Count I on alternative jurisdictional grounds and find that Counts II, III and IV are supported by the doctrine of competitor standing, we need not address Washtech's

First, Washtech has suffered an injury in fact under the competitor standing doctrine. "The doctrine of competitor standing addresses the first requirement [of standing] by recognizing that economic actors suffer an injury in fact when agencies . . . allow increased competition against them." *Sherley v. Sebelius*, 610 F.3d 69, 72 (D.C. Cir. 2010) (internal quotation and alterations omitted). Although "our cases addressing competitor standing have articulated various formulations of the standard for determining whether a plaintiff . . . has been injured," the "basic requirement common to all our cases is that the complainant show an actual or imminent increase in competition, which increase we recognize will almost certainly cause an injury in fact." *Id.* at 73.

As an initial matter, Washtech's complaint includes allegations that its members compete with F-1 student visa holders who are working in the OPT program pursuant to the DHS's regulations. The complaint alleges that three of Washtech's members have applied to companies for STEM jobs and that F-1 student visa holders who work at the same companies have applied for OPT extensions. *See, e.g.*, Compl. ¶¶ 109–10 ("Since 2010, [a Washtech member] applied to Microsoft for computer programming jobs three times. At least 100 applications for OPT extensions have been made . . . for workers at Microsoft."); *id.* ¶¶ 151–53 (alleging that member "applied for a programming job at" Computer Sciences Corporation (CSC); that "[a]t least 5 contract computer labor companies that claim to supply workers to CSC have placed advertisements seeking workers on OPT"; and that "[a]t least 6 applications for OPT extensions have been made . . . for workers at CSC"). Washtech has thus alleged that its members are "participating in the [STEM] labor market" in competition

other theories. *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1287 (D.C. Cir. 2016).

with OPT workers. *Mendoza v. Perez*, 754 F.3d 1002, 1013 (D.C. Cir. 2014).

The DHS argues that Washtech's members are not direct and current competitors of OPT workers because Washtech members have not "bothered to even apply" for STEM jobs since the 2016 Rule took effect. Appellees' Br. 42. True enough, the complaint's allegations do not state that Washtech's members have applied after March 11, 2016, the date the DHS promulgated the 2016 Rule. But *Mendoza* forecloses the DHS's argument. In *Mendoza*, domestic herders challenged agency regulations that allegedly increased the number of foreign herders in the labor market. We held the plaintiffs suffered an injury in fact. 754 F.3d at 1011. Although the agency argued the plaintiffs were not competitors of foreign herders because the plaintiffs had not held a herding job for several years, we explained that domestic herders who "affirmed their desire to work" were "not removed from the herder labor market simply because they do not currently work as herders and have not filled out formal job applications." *Id.* at 1013–14. Unlike in *Mendoza*, Washtech's complaint alleges that at least three of its members are currently employed on a full- or part-time basis in STEM positions, *see* Compl. ¶¶ 106–07, 137, 184–85, and that their job searches are "constant[]," *id.* ¶ 107, and "continuous," *id.* ¶ 184. Washtech's members, then, are not removed from the STEM labor market simply because they have not filled out formal job applications since the 2016 Rule took effect. To the contrary, they have affirmed their desire to work.

Moreover, Washtech alleges that the 2016 Rule increased the labor supply in the STEM job market. *See* Compl. ¶ 108 (alleging that "[c]omputer programming is one of the degrees DHS targeted for increasing the labor supply under the 2016 Rule"). Although the DHS argues that Washtech's claim that

the 2016 Rule has increased competition in the job market compared to pre-2016 levels is "imagin[ary]," Appellees' Br. 42, Washtech may rely on "mere allegations" rather than "specific facts" to establish standing at the motion to dismiss stage, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Additionally, Washtech's allegations of increased competition in the STEM labor market are supported by "facts found outside of the complaint," which "we are permitted" to "consider . . . on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction." *Mendoza*, 754 F.3d at 1016 n.9; *see* White House Press Release, IMPACT REPORT: 100 Examples of President Obama's Leadership in Science, Technology, and Innovation (June 21, 2016) ("Approximately 34,000 individuals are participating in the STEM Optional Practical Training program at present, and with the[] improvements [of the 2016 Rule] the total may expand to nearly 50,000 in the first year and grow to approximately 92,000 by the tenth year of implementation."), https://obamawhitehouse.archives.gov/the-press-office/2016/06/21/impact-report-100-examples-president-obamas-leadership-science.

Therefore, Washtech has sufficiently pleaded that the DHS's regulations "allow increased competition against" Washtech's members, *Sherley*, 610 F.3d at 72, which is a concrete injury-in-fact, *see Mendoza*, 754 F.3d at 1011 ("[A]n individual in the labor market for open-range herding jobs would have standing to challenge [agency] rules that lead to an increased supply of labor—and thus competition—in that market."); *cf. Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 802 (D.C. Cir. 1985) (plaintiff union's members challenging procedural validity of immigration rules that "allow[ed] aliens into the country to perform work which would otherwise likely go to [plaintiff's] members" suffered injury in fact because "those alien workers represent

competition which [plaintiff's members] would not face if the Government followed the procedures required by law").

Second, Washtech's injury is caused by the 2016 Rule. The increase in competition is directly traceable to the DHS because the DHS's regulations authorize work for the OPT participants with whom Washtech members compete for jobs. *See Honeywell Int'l Inc. v. EPA*, 374 F.3d 1363, 1369 (D.C. Cir. 2004) (per curiam) (agency regulation that "legalizes the entry of a product into a market in which [plaintiff] competes" causes plaintiff injury), *withdrawn in part on other grounds*, 393 F.3d 1315 (D.C. Cir. 2005) (per curiam). The DHS argues that Washtech's injury is not caused by the DHS because employers in the STEM labor market independently decide whether Washtech members are hired. We have heretofore rejected this line of reasoning as "inconsistent with the competitor standing doctrine." *Bristol-Myers Squibb Co. v. Shalala*, 91 F.3d 1493, 1499 (D.C. Cir. 1996). In *Bristol-Myers*, the manufacturer of a pioneer drug challenged an agency regulation authorizing the manufacture of generic versions of the same drug. *Id.* at 1495–97. After concluding that the increase in competing products in the market was a sufficient injury in fact, we held the challenged regulation caused the injury. *Id.* at 1499. Because "the injury claimed is exposure to competition" rather than "lost sales, per se," it was "no answer to say that the FDA is merely permitting a competitive product to enter the market and leaving the purchasing decision to the consumer." *Id.* The same rationale obtains here. The injury claimed is exposure to increased competition in the STEM labor market—not lost jobs, per se. Accordingly, the DHS's argument that its regulation leaves the hiring decision to the employer is unavailing. *See also Honeywell Int'l*, 374 F.3d at 1369 (rejecting argument that plaintiff's injury was not caused by regulation allowing competing products into market because plaintiff could only

"speculat[e] about the purchasing decisions of third parties not before the court"). Washtech has therefore "demonstrate[d] a causal relationship between the final agency action and the alleged injur[y]." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005).

Third, and finally, Washtech's injury is redressable by a favorable decision. Washtech has alleged that it is injured because of increased competition from workers who are eligible to work only because of the 2016 Rule. A court order invalidating the 2016 Rule would eliminate workers from the STEM job market and therefore decrease competition for the STEM jobs pursued by Washtech's members. The specific injury suffered, then, would be remedied by a favorable court order. *See Sherley*, 610 F.3d at 72 (stem-cell research plaintiffs challenging regulations that increased competition for research grants had standing; redressability "clear"); *Honeywell Int'l*, 374 F.3d at 1369 ("As a favorable opinion of the court could *remove the competing* [products] from the market, redressability is satisfied . . . ." (emphasis added)). Accordingly, Washtech has standing to bring its three claims challenging the 2016 Rule.

Washtech's standing to bring Count I, a claim that the 1992 Rule exceeds the DHS's statutory authority, is less certain. Washtech argues that the 1992 Rule caused the same injury as the 2016 Rule—an increase in competition for STEM jobs as a result of the Rule's permitting OPT workers in the STEM field—but Washtech's complaint provides less substance regarding the 1992 Rule. The complaint alleges that Washtech members compete with workers operating under the extensions authorized by the 2016 Rule but does not specifically allege that they compete with workers operating under the initial twelve-month OPT period authorized by the 1992 Rule. The DHS urges us to agree with the district court

that Washtech's failure is fatal to its standing to challenge the 1992 Rule. We are skeptical of the DHS's argument. No OPT participants could apply for extensions to work without first working for twelve months as authorized by the 1992 Rule. The allegations regarding the 2016 Rule naturally and inevitably encompass allegations against the 1992 Rule, even if not explicitly spelled out that way in the complaint. Nevertheless, we need not decide this issue because there is another jurisdictional bar.[3]

We affirm dismissal of Count I on the alternative ground that the claim is untimely. Under 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."[4] The "right of action first accrues on the date of the final agency action." *Harris v. FAA*, 353 F.3d

---

[3] The district court also held that Washtech had conceded Count I and therefore dismissed it pursuant to Local Rule 7(b). We take no position on the district court's 7(b) holding because we dismiss Count I on the basis of a threshold jurisdictional ground. We further address application of Local Rule 7(b), *infra* at Part II.B.1.

[4] Section 2401(a) "is a jurisdictional condition attached to the government's waiver of sovereign immunity." *Spannaus v. DOJ*, 824 F.2d 52, 55 (D.C. Cir. 1987). Accordingly, we may decide the claim on this alternative jurisdictional ground without reaching other jurisdictional issues such as standing. *P&V Enters. v. U.S. Army Corp. of Eng'rs*, 516 F.3d 1021, 1026–27 (D.C. Cir. 2008) (holding claim time-barred under section 2401(a) and affirming dismissal of claim "for lack of subject-matter jurisdiction" without "reach[ing] the [defendant's] alternative objection that [plaintiff] lacks standing"); *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("While . . . subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues.").

1006, 1010 (D.C. Cir. 2004). The 1992 Rule was unquestionably final agency action. Therefore, the six-year window to directly challenge the statutory authority of the 1992 Rule closed in 1998. As discussed *infra*, however, the dismissal of Count I does not foreclose Washtech's challenge to the statutory authority of the OPT program as a whole because the 2016 Rule may have reopened the issue anew.

## B. FRCP 12(b)(6) and Local Rule 7(b) challenges

We now turn to Washtech's claims attacking the 2016 Rule. The DHS asserts that all three of the remaining counts, II, III and IV, fail to state a claim for relief. A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint must provide "more than labels and conclusions"; although it "does not need detailed factual allegations," the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The DHS also asserts that we should affirm the district court's decision to treat two of the remaining counts—II and III—as "conceded" pursuant to the United States District Court for the District of Columbia's Local Rule 7(b), which provides:

> Within 14 days of the date of service [of a party's motion] or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

D.D.C. LOCAL RULE 7(b).

### 1. Count II

Count II alleges that the "2016 Rule is in excess of DHS['s] authority" because the DHS's "policy of allowing aliens to remain in the United States after completion of the course of study to work or be unemployed is in excess of DHS authority to admit academic students under 8 U.S.C. § 1101(a)(15)(F)(i) and conflicts with" other cited INA provisions. Compl. ¶¶ 62–63. Elsewhere in its complaint, Washtech's allegations flesh out the core of its claim: the INA's F-1 visa provision authorizes the admission of "students"; nonimmigrants who work under the OPT program are not "students" under the statute; and the regulation authorizing nonimmigrants to work under the OPT program is therefore in excess of statutory authority. *See id.* ¶ 35 ("[N]o statute currently permits F-1 student visa holders to work."); *id.* ¶ 39 ("DHS has [now] created several extra-statutory regulatory F-1 student visa work programs" by authorizing F-1 visa holders to work).

The DHS argues this is not enough to state a plausible claim for relief. It asserts Washtech needs to "explain[]" how the regulation exceeds the DHS's statutory authority. Appellees' Br. 51. But we are hard-pressed to imagine what more Washtech needs to allege to satisfy the "lesser showing

required at the pleading stage," *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 18 (D.C. Cir. 2011), particularly in light of the kind of claim it brings. A claim that a regulation exceeds statutory authority is not a claim that requires factual allegations about the defendant's actions in order to demonstrate lack of authority. *Compare Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136–37 (D.C. Cir. 2002) (dismissing complaint alleging simply "President acted unconstitutionally and *ultra vires* under the Property Clause" because plaintiff "fail[ed] to allege any facts sufficient to support its *ultra vires* claim" and "present[ed] no more than legal conclusions"). Here, the complaint plainly identifies the perceived disconnect between what the statute permits (admitting nonimmigrant aliens as "students") and what the regulations do (allowing the same nonimmigrant aliens to remain in the country to work after they are no longer students). The complaint also cites the relevant statutory and regulatory provisions. Washtech's claim survives a 12(b)(6) motion to dismiss.

Despite the fact that Washtech stated a plausible claim for relief, the district court concluded that Washtech's response in opposition to the motion to dismiss was inadequate. The district court thus "deem[ed]" it "appropriate" to treat the issue as "conceded" and dismissed Count II pursuant to Local Rule 7(b). *Washtech III*, 249 F. Supp. 3d at 555. We review "the district court's application of [Local Rule] 7(b) for abuse of discretion." *Fox*, 389 F.3d at 1294. We think the district court's decision to dismiss Washtech's plausible claim for relief because its timely response to the motion to dismiss purportedly failed to state Washtech's opposition with sufficient substance—notwithstanding Washtech's response in fact disagreed with the DHS's contention that it failed to state a plausible claim for relief and also included a citation to the allegedly deficient complaint—was an abuse of discretion.

The circumstances here are distinguishable from our precedent affirming the application of Local Rule 7(b). We have endorsed dismissing a complaint pursuant to Local Rule 7(b) if the plaintiff failed to timely file a response in opposition to the defendant's FRCP 12(b)(6) motion to dismiss. *Fox*, 389 F.3d at 1294 (dismissing amended complaint after plaintiff failed to respond to motion to dismiss because of counsel's alleged lack of notice of motion to dismiss due to case filing system malfunction); *see also Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 483–84 (D.C. Cir. 2016) (dismissing complaint after plaintiff failed to timely file response in opposition to FRCP 12(b)(6) motion to dismiss but holding that dismissal *with prejudice* was abuse of discretion because plaintiff attempted to remedy error by filing late response and filing amended complaint). That is not the case here: Washtech did timely file a response in opposition to the DHS's motion to dismiss. Therefore, *Fox* does not control.

In the context of non-dispositive motions, we have affirmed district court decisions that treated as conceded an issue left entirely unaddressed by the plaintiff in a timely filed response. *See Texas v. United States*, 798 F.3d 1108, 1110, 1113–16 (D.C. Cir. 2015) (affirming grant of defendant's motion seeking attorneys' fees when plaintiff's response did not dispute assertion that defendant was "prevailing party" within meaning of statute); *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428–29 (D.C. Cir. 2014) (affirming grant of defendant's motion to strike untimely declaration because plaintiff "did not raise the argument" that FRCP 26(e) permitted admission of untimely declaration "in his opposition to the defendant's motion to strike"). That, too, is not the case here. Washtech included a section in its response specifically addressing the sufficiency of its claims for relief. *See* Pl's Resp. to Mot. to Dismiss at 43, *Washtech III*, 249 F. Supp. 3d 524 (No. 1:16-cv-01170), ECF No. 20. Washtech asserted that

"[e]ach count contains both a legal and factual basis" for relief. *Id.* And Washtech cited its complaint—the pleading on which an FRCP 12(b)(6) motion to dismiss focuses—in its response. *See id.*

Granted, Washtech would have been wise to more fully develop its argument that it met FRCP 12(b)(6)'s pleading standard. Doing so would have helped the district court more efficiently evaluate the sufficiency of Washtech's claim. But it is plain that Washtech did not "concede[]," D.D.C. LOCAL RULE 7(b), that it failed to state a claim: Washtech did not "yield or grant" its argument, *Concede*, AMERICAN HERITAGE COLLEGE DICTIONARY 296 (4th ed. 2007), nor did it "acknowledge" or "accept" the DHS's position, *Concede*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 469 (3d ed. 1993). Unlike the plaintiffs in *Texas* and *Wannall*, Washtech was not silent when confronted with the argument that its allegations fell short.

We conclude that a party may rest on its complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible claim for relief. The district court decision turned what should be an attack on the legal sufficiency of the complaint into an attack on the legal sufficiency of the response in opposition to the motion to dismiss. That transformation undermines "the clear preference of the Federal Rules to resolve disputes on their merits." *Cohen*, 819 F.3d at 482. Although Local Rule 7(b) "is a docket-management tool that facilitates efficient and effective resolution of motions by requiring the prompt joining of issues," *Fox*, 389 F.3d at 1294, it is not a tool to subvert the FRCP 12(b)(6) inquiry simply because the court finds the plaintiff's opposition to the motion to dismiss, although pressed, underwhelming. We recognize we have only once before found an abuse of discretion in the district court's application of Local Rule 7(b). *See Cohen*, 819

F.3d 476.[5] But Washtech's complaint in fact stated a plausible claim for relief that the regulation exceeded the DHS's statutory authority. And Washtech timely filed an opposition to the FRCP 12(b)(6) motion to dismiss that indicated it adhered to its position that its complaint was well-pleaded. In this circumstance, we believe that, in kicking Washtech out of court under Local Rule 7(b), the district court abused its discretion.

That said, whether Count II may proceed remains in question. Count II as framed alleges that the entire OPT program is *ultra vires*. *See* Compl. ¶¶ 62–63. The challenge to the DHS's authority to provide for OPT workers at all implicates the authority first granted by the 1992 Rule. As discussed *supra*, the six-year statute of limitations on such a challenge closed in 1998. Washtech asserts, however, that it may still challenge the statutory authority for the entire OPT program under the reopening doctrine. The "doctrine arises where an agency conducts a rulemaking or adopts a policy on an issue at one time, and then in a later rulemaking restates the

---

[5] *Cohen* also raised "concerns" about allowing the district court to rely on Local Rule 7(b) at all in the context of a 12(b)(6) motion to dismiss. 819 F.3d at 481–83; *cf. Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016) (holding that "a motion for summary judgment" pursuant to FRCP 56 can never "be deemed 'conceded'" pursuant to Local Rule 7(b) "for want of opposition"). Assuming without deciding we share *Cohen*'s concerns, we are bound at the panel stage by our precedent permitting district courts to apply Local Rule 7(b) in the context of a 12(b)(6) motion to dismiss. *Fox*, 389 F.3d 1291; *see Cohen*, 819 F.3d at 483 (stating that *Fox* "compels us to affirm the district court's decision insofar as it granted the motion to dismiss the complaint" after plaintiff failed to timely file response). We also need not resolve the "tension" between the local and federal procedural rules, *Cohen*, 819 F.3d at 481, because we find the district court abused its discretion and reverse on that ground.

policy or otherwise addresses the issue again without altering the original decision." *CTIA-Wireless Ass'n v. FCC*, 466 F.3d 105, 110 (D.C. Cir. 2006) (internal quotation and alterations omitted). If the reopening doctrine applies, it "allows an otherwise stale challenge to proceed because the agency opened the issue up anew, and then reexamined and reaffirmed its prior decision." *P&V Enters. v. Army Corps of Eng'rs*, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (internal quotation and alteration omitted). Accordingly, if the DHS reopened the issue of whether the OPT program as a whole is statutorily authorized in its notice of proposed rulemaking vis-à-vis the 2016 Rule, "its renewed adherence is substantively reviewable," *CTIA-Wireless Ass'n*, 466 F.3d at 110 (internal quotation omitted), and the challenge to the entire program may proceed. *See Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988) (applying reopening doctrine and allowing challenge to "unchanged [and] republished portion of" new regulation that was "originally enacted" in old regulation).

The district court did not decide whether Washtech's challenge to the OPT program's statutory authority was reviewable under the reopening doctrine. *See Washtech III*, 249 F. Supp. 3d at 537 n.3. We therefore decline to address the question in the first instance and leave it for the district court to address on remand. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (stating "general rule . . . that a federal appellate court does not consider an issue not passed upon below"); *Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 341 (D.C. Cir. 2009) ("Although we . . . have the discretion to consider questions of law that were not passed upon by the District Court, this court's normal rule is to avoid such consideration." (internal quotation and alterations omitted)).

## 2. Count III

Washtech's third claim alleges three procedural deficiencies in the DHS's promulgation of the 2016 Rule: (1) failure to comply with the Congressional Review Act; (2) failure to provide "actual" notice and comment; and (3) failure to comply with incorporation-by-reference requirements. The complaint does not state a plausible claim for relief based on any of the three purported procedural violations. We therefore affirm the district court's dismissal pursuant to FRCP 12(b)(6). We take no position on whether the district court abused its discretion in also dismissing the claim pursuant to Local Rule 7(b).

First, Washtech alleged that the 2016 Rule was published in the Federal Register fewer than 60 days before it took effect, contrary to the Congressional Review Act's mandatory 60-day delay. Compl. ¶¶ 64–66 (citing 5 U.S.C. § 801(a)(3)(A)). Even taking the factual allegation as true, it does not state a claim for relief. The Congressional Review Act provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. This judicial-review prohibition "denies courts the power to void rules on the basis of agency noncompliance with the Act." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009). Whether or not the 2016 Rule took effect less than 60 days after its publication, then, there is no "relief" we can "grant." FED. R. CIV. P. 12(b)(6); *see Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (motion to dismiss may be granted if plaintiff "would not have a claim upon which relief could be granted even with [sufficiently pled] facts").

Second, Washtech alleged that the DHS "failed to subject the question of whether the OPT program should be expanded

beyond a year to actual notice and comment." Compl. ¶ 67. In addition to the fact that the DHS did in fact subject the question to notice and comment, *see* 80 Fed. Reg. at 63385–86 (requesting and responding to "public comment" on proposed 24-month OPT extension), the complaint makes no further allegations supporting its bare legal conclusion. Therefore, the complaint offers nothing more than "[t]hreadbare recitals of the elements of" a notice-and-comment "cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. That is not enough to survive a 12(b)(6) motion to dismiss. *See id.*

Third, Washtech alleged that the provision of the OPT 2016 Rule that the Secretary is to "maintain" a "complete list of qualifying [STEM] degree program categories" to be published on the "Student and Exchange Visitor Program Web site," 8 C.F.R. § 214.2(f)(10)(ii)(C)(2)(ii), improperly incorporates an external source without following the five incorporation-by-reference requirements set forth in 1 C.F.R. § 51.1–51.9. Compl. ¶¶ 69–80. If the incorporation-by-reference requirements are not followed, the external material is not "published." 5 U.S.C. § 552(a)(1). But the failure to publish material in a rulemaking is cognizable only if (1) the material was "required to be published"; (2) the aggrieved party did not have "actual and timely notice of the terms thereof"; and (3) the aggrieved party is "required to resort to, or [is] adversely affected by," the unpublished material. *Id.*; *cf. PPG Indus., Inc. v. Costle*, 659 F.2d 1239, 1250 (D.C. Cir. 1981). Washtech's complaint contains no allegations regarding these three requirements. Without them, Washtech has not pleaded a claim for relief on the basis of the alleged incorporation-by-reference violations. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) (plaintiff's complaint must allege sufficient facts of each element of claim to survive motion to dismiss).

### 3. Count IV

Washtech's fourth and final claim alleges that the 2016 Rule is arbitrary and capricious because it "requires employers to provide foreign-guest workers OPT mentoring without requiring that such program be provided to American workers" and because it "singles out STEM occupations for an increase in foreign labor through longer work periods with no justification." Compl. ¶¶ 81–84.

Neither allegation "permit[s] the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The complaint's allegation that the Rule deals with two different things—OPT workers and American workers—in two different ways—the former group receives mentoring programs but the latter does not—does not state a plausible claim that the regulation is arbitrary and capricious. Washtech's desire for its own members to participate in mentoring programs does not sufficiently allege illegality on the DHS's part. *Cf. Twombly*, 550 U.S. at 555–57 (pleading defendant's "parallel conduct" in antitrust case insufficient even though parallel conduct *could* indicate intent to conspire because, without more, alleging "parallel conduct" placed defendant in "neutral territory"). Further, the complaint's allegation that Washtech arbitrarily increased foreign labor in the STEM market with no justification for not doing so in other fields is unsupported by any factual allegations. Washtech has set forth no more than an insufficient "defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *see also L. Xia v. Tillerson*, 865 F.3d 643, 660 (D.C. Cir. 2017) ("conclusory allegation" of unlawfulness insufficient to survive 12(b)(6) motion to dismiss). Accordingly, we affirm the district court's dismissal of Count IV under FRCP 12(b)(6).

For the foregoing reasons, we affirm the district court's dismissal of Counts I, III and IV. We reverse its dismissal of Count II and remand Count II for further proceedings consistent with this opinion.

*So ordered.*